### JULIA GRUSZEWSKY vs. DIRECTOR GENERAL OF RAILROADS.

First Judicial District, Hartford, March Term, 1921.

WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The test of whether an employee of a railroad is engaged in interstate commerce when injured is, whether at the time of his injury he was engaged in interstate transportation or in work so closely related to it as to be practically a part of it.

In the present case such an employee was engaged in operating the boiler of a heating plant in a railroad yard from whence steam was transmitted in pipes to cars standing on the track, which were then used in interstate and intrastate transportation. He was required five or six times an hour to bring coal from cars on the track to the boiler and, by reason of exposure to the cold and then to the heat of the boiler room, contracted lobar pneumonia, from which he died. *Held* that he was engaged in interstate commerce, and hence his dependent was not entitled to compensation under our Workmen's Compensation Act (General Statutes, Chap. 284), but must seek her remedy under the Federal Employers' Liability Act (U. S. Comp. Stat., §§ 8657–8665).

Argued March 9th—decided April 5th, 1921.

APPEAL by the plaintiff from the refusal of the Compensation Commissioner of the first district to award her compensation because of his alleged lack of jurisdiction to make such award due to the fact that her deceased husband at the time of his injury was engaged in interstate commerce,—taken to and reserved by the Superior Court in Hartford County, *Maltbie, J.*, upon the facts found by the Commissioner, for the advice of this court. *Judgment dismissing appeal advised.*

*Josiah H. Peck* and *Jacob Schwolsky*, for the plaintiff.

*James W. Carpenter*, for the defendant.

WHEELER, C. J. The reservation requires our advice upon the single question whether the deceased at the time he contracted the disease from which he died was engaged in interstate commerce. If he was so engaged, his dependent is not entitled to compensation under our Act (General Statutes, Chap. 284), but must seek her remedy under the Federal Act (U. S. Comp. Stat. §§ 8657–8665). The dependent cannot take her choice of the remedies under the Federal Employers' Act or our Compensation Act. *St. Louis, S. F. & T. Ry. Co.* v. *Seale*, 229 U. S. 156, 158, 33 Sup. Ct. 651.

The New York, New Haven and Hartford Railroad Company maintained in its yard adjoining its tracks a heating plant in which steam was generated and transmitted through pipes to cars standing on its tracks, with which connection was made by means of steam plugs. The steam so generated was used in interstate and intrastate commerce.

The deceased employee did not make the connections with the steam plugs, but operated the boiler of the heating plant, and five or six times an hour brought the coal to the boiler from coal cars standing on the track near the boiler house. He was required to keep the pathway from the boiler room to the coal cars open and free from snow in order to get the coal from the cars. Because of his subjection to striking changes of temperature and unusual conditions of exposure through working in the cold and then in the heat of the boiler room, the deceased contracted lobar pneumonia, which was caused "by the conditions under which he worked and the activities of his employment," from which he died.

The Supreme Court of the United States has made the test of whether an employee was at the time of his injury engaged in interstate commerce depend upon

answering in the affirmative the question: "Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?" *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, 36 Sup. Ct. 517. In the application of this test it has been held that one injured while engaged in moving coal which was to be used in interstate commerce was not engaged in such commerce. *Delaware, L. & W. R. Co.* v. *Yurkonis,* 238 U. S. 439, 35 Sup. Ct. 902. So the taking down and putting up fixtures in a machine shop used in repairing parts of engines which were engaged in interstate commerce, was held not to be an employment in such commerce. *Shanks* v. *Delaware, L. & W. R. Co.,* 239 U. S. 556, 36 Sup. Ct. 188. Both employments were deemed too remote from interstate transportation to be regarded as a part of it.

Similarly the repair of an engine which had then no definite destination, but a probability of subsequent use in interstate commerce, was deemed too distant from that commerce to be a part of it. *Minneapolis & St. L. R. Co.* v. *Winters,* 242 U. S. 353, 37 Sup. Ct. 170. And one engaged in switching coal cars from a storage track to a coal shed where the coal was placed in chutes or bins and taken therefrom as needed to supply locomotives engaged in both kinds of commerce, was held to have no such close or direct relation to interstate transportation, or to be so closely related to it as to be practically a part of it. *Chicago, B. & Q. R. Co.* v. *Harrington,* 241 U. S. 177, 36 Sup. Ct. 517.

Counsel for the petitioner in *Erie R. Co.* v. *Collins,* 253 U. S. 77, 40 Sup. Ct. 450, have summarized the decisions aptly: "The erection and maintenance of the structures in which the instrumentalities of commerce are built, repaired and housed, the construction and repair of the instrumentalities of commerce, the

procurement and placing for convenient use of the articles consumed in commerce, when they have relationship to interstate commerce are properly classified . . . not as work in interstate commerce."

But when the structure or instrumentality or article is being directly and immediately used in interstate commerce, it is held to be a part of it or so closely related to it as to be a part of it, and each one engaged in its service is at the time in such commerce. Thus the carrying of bolts from a tool car to a bridge of a railroad in process of repair and used in both kinds of commerce, was held to be work so closely connected with interstate commerce as to be a part of it, since the bridge was indispensable to the operation of the railroad, and every instrumentality needed in its operation must be kept fit for such use. *Pedersen* v. *Delaware, L. & W. R. Co.*, 229 U. S. 146, 33 Sup. Ct. 648; *Southern Ry. Co.* v. *Puckett,* 244 U. S. 571, 37 Sup. Ct. 703. So the operation of drying sand in a sand house standing alongside of the railroad track, from which the engines of the railroad engaged in both kinds of commerce were sanded, was held to be within interstate commerce. *Erie R. Co.* v. *Szary,* 253 U. S. 86, 40 Sup. Ct. 454. The case decides that the preparation and placing of an article for immediate use in interstate commerce is a part of that commerce. Each of these cases comes clearly within the test and there is no serious difficulty in applying it.

The case of *Erie R. Co.* v. *Collins,* 253 U. S. 77, 40 Sup. Ct. 450, presents greater difficulties. Collins when injured was engaged in operating an engine which pumped water from a well near the railroad into a tank, from whence it was supplied to engines engaged upon the railroad in both interstate and intrastate commerce. The court held that Collins' duty was discharged in both kinds of commerce with no interval

separating the duty as to either, and that his duty at the pumping station was performed, and the instruments and facilities of it were kept in readiness for use, and were used, in both commerces as demanded, and hence the test of the cases was satisfied. The pumping of the water into a tank and its supply therefrom to the engines was all one process for the single end of supplying water to the engines.

In *Chicago, B. & Q. R. Co.* v. *Harrington*, 241 U. S. 177, 36 Sup. Ct. 517, the coal was switched from a track, on which the cars of coal were stored, to a trestle, from which it was supplied to the engines. The switching and filling of the chutes may be said to be a separable part of the process of supplying the engines with coal and remote from the use of the engines in interstate commerce. The two cases may perhaps be distinguished upon the theory of the separability or nonseparability of the several steps in the work performed. It must be conceded that the *Collins* case and the *Harrington* case are not very far apart. The *Collins* case is the latest expression of the United States Supreme Court upon this point and made deliberately, since the case following it, *Erie R. Co.* v. *Szary*, 253 U. S. 86, 40 Sup. Ct. 454, was decided upon its authority. We regard it as controlling the decision in this case and to be followed by us irrespective of whether we would have reached a like conclusion relying upon our own judgment instead of upon the authority of this case.

Gruszewsky, the deceased, was engaged in the operation of generating steam by means of a heating plant in a railroad yard from whence the steam was transmitted in pipes to cars standing on the track of the railroad, and by means of steam plugs connection was made with the cars and the steam supplied. The generation of the steam and its transmission to the

cars was one process, more so even than the pumping of the water to the tanks and the supply therefrom to the engines, as in the *Collins* case. There was no separable part of this entire process. All of its instrumentalities and facilities were for the one end, the supply of heat for use in both kinds of commerce. *Roush* v. *Baltimore & O. R. Co.*, 243 Fed. Rep. 712, was similar in its facts to the *Collins* case, and a like result was reached.

The Superior Court is advised that Gruszewsky, the deceased, was, at the time he contracted pneumonia as described in the finding, engaged in interstate commerce and subject to the provisions of the Act of Congress of April 22d, 1908 (U. S. Comp. Stat. §§ 8657–8665), and that the plaintiff is not entitled to compensation under Chapter 284 of the General Statutes.

In this opinion the other judges concurred.