Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of FLORENCE M. OTTERSTEDT, Respondent, on Behalf of Herself and Minor Children, for Compensation under the Workmen's Compensation Law, for the Death of Her Husband, CHARLES E. OTTERSTEDT, *v.* LEHIGH AND HUDSON RIVER RAILWAY COMPANY, Employer and Self-Insurer, Appellant.

Third Department, March 17, 1922.

**Workmen's Compensation Law — interstate commerce — member of repair and construction gang not engaged in interstate commerce while building new crossover switch.**

The decedent, who was a member of a repair and construction gang working on the defendant railroad, was not engaged in interstate commerce at the time of the injury which caused his death, where it appeared that he was injured in the morning while on his way to work and that the gang with which he was connected and with which he would have worked on the day of the accident was engaged in making a new crossover switch on the defendant's tracks.

APPEAL by the defendant, Lehigh and Hudson River Railway Company, from a decision and award of the State Industrial Board, entered in the office of said Board on the 26th day of August, 1921.

*Charles B. Sullivan,* for the appellant.

*Charles D. Newton,* Attorney-General [*E. C. Aiken,* Deputy Attorney-General, and *Edward P. Lyon* of counsel], for the respondents.

KILEY, J.:

Claimant's intestate was injured, while at work for appellant, on the 17th day of August, 1920. He died on the eighteenth, the following day. The accident occurred at Hudson Junction located as being one-half mile east of Eastchester in this State. At that junction the appellant's railroad intersects and is connected with other lines of railroad. This railroad company had employed Otterstedt from July 30, 1920, until August seventeenth, aforesaid, except he had lost several days' time before August twelfth, and did not work from that date until he came to work on the morning of the seventeenth. He was injured at six-nineteen A. M., before commencing work. He was run over by one of appellant's trains, and on that part of its line which runs between Warsaw and Greycourt wholly within this State and at that time was not carrying any interstate freight. At Greycourt it hitched on to milk cars destined for New Jersey. That fact does not signify here, because he was not one of the train crew, but was a laborer working in the repair and construction gang. The only question here is whether

the man was to commence work on that morning on new work or was going to work on tracks already finished and in use. At this crucial point the record is confusing. The last work he did on the twelfth day of August was in foreman Barry's gang, although before that time he had worked under another foreman or superintendent named Bellew. The work was being rushed at that point and both gangs, consisting of about twenty men, worked together. From Barry's evidence I glean that the company wanted to change and lay a new crossover switch, and in the course where this switch was to be laid stood a rock six or seven feet high toward which they were building this particular part of the crossover. Barry says that they were going to take out this rock and level up the surface of the track already built toward it on that day, which they actually did after the man was injured. He says they surfaced or leveled the surface on the track; that trains had not run over it and could not until such leveling and surfacing, viz., removing stone and dirt and making it level with the rails, was completed. This last is, in part, inference but admits of no other, because all of the other construction trains had been running since August twelfth previously. On the morning of the seventeenth of August there were about 100 feet of this new construction to be built before that particular part was completed so that connection with the other track could be made. No doubt is present as to the nature of the business of this carrier — it was interstate commerce — but here is an uncompleted facility which would not engage in interstate commerce until completed. It seems to me that the work of claimant's intestate ended before interstate commerce began. In *New York Central R. R. Co.* v. *White* (243 U. S. 188) the court says: " The admitted fact that the new station and tracks were designed for use, when finished, in interstate commerce does not bring the case within the federal act.*  The test is ' Was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it.' " Citing *Shanks* v. *Delaware, L. & W. R. R.* (239 U. S. 556), and continuing: " Decedent's work bore no direct relation to interstate transportation, and had to do solely with construction work." It seems to me that this is a stronger case than *Saccomanno* v. *Grasse River R. R. Corp.* (191 App. Div. 761). Under the holding of Mr. Justice HUGHES in *Osborne* v. *Gray* (241 U. S. 16), the respondent urges that the employer had the burden of proof. I would like to hold so, but it is not necessary, and previous decisions of this court would conflict with such holding. Query, why? Because if it could

---

* See 35 U. S. Stat. at Large, 65, chap. 149, as amd. by 36 id. 291, chap. 143, being Federal Employers' Liability Act.— [REP.

be held as a rule against the employer it would necessarily call for the application of the same rule against the employee. As before observed, there is much confusion in the record in the evidence given by appellant's witnesses. On the day in question the remainder of the gang worked on two tracks. Some parts of the evidence would indicate that this crossover which was being built over the ground from which the large rock was to be removed, became a part of the main track. The Industrial Board had to make its findings from this evidence. The confusion lies in the evidence as to just what track or portion of track the men worked upon in the forenoon of the seventeenth of August. The trains were running on all of the other tracks, and the inference that it was on the uncompleted part seems warranted.

I report for affirmance.

Award unanimously affirmed, with costs.